# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 7, 2013 Session

## STATE OF TENNESSEE v. JAY EARL HAYNES

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-288    Lee Moore, Judge**

---

**No. W2012-01917-CCA-R3-CD  - Filed July 17, 2013**

---

Appellant, Jay Earl Haynes, was indicted by the Dyer County Grand Jury in August 2009, for two counts of rape in connection with the anal rape of the two mentally-incapacitated grandsons of Appellant's live-in girlfriend. Appellant argues that the evidence was insufficient to support his convictions because he could not have known that the victims were mentally incapacitated and that the trial court erred in imposing consecutive sentences. After a thorough review of the record, we conclude that there is ample evidence upon which a reasonable trier of fact could find that Appellant knew of the victims' mental incapacity and that his criminal activity was so extensive as to support the imposition of consecutive sentences. Therefore, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for appellant, Jay Earl Haynes.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In June 2009, the male victims, who are twins, were nineteen years old. The victims lived with their mother and required constant adult supervision because they had the mental development of a child. The evening of June 26, their grandmother and her boyfriend,

Appellant, picked the victims up to spend the night. Appellant had been dating their grandmother for about five months and living with her for about two weeks. The grandmother and Appellant had taken the victims out dancing a few times before June 26.

The victims' grandmother was the supervisor of the kitchen at the Dyer County Jail. Very early in the morning of June 27, she received a call that she needed to be at work at 4:00 a.m. She tried to call the victims' mother but was unable to reach her. She left for work while Appellant and the victims were sleeping.

In the morning, Appellant asked one of the victims to come into the bedroom. Appellant told the victim to pull his pants down. After using lotion to lubricate the victim's anus, he penetrated the victim and anally raped him. After Appellant was finished, he wiped the victim with a towel. The victim said he saw blood on the towel. The victim's brother was not present during the rape. Appellant next raped the other victim in the living room on the mattress on which the victims slept the night before. Appellant also raped each victim a second time, one in the bedroom and one in the living room. Appellant told the victims not to tell what had happened. Their grandmother came home and took them to their mother's house around 6:00 p.m.

When they arrived home, their mother stated that she could tell something was wrong because they were both withdrawn. They told her what had occurred while at their grandmother's house. As a result, their mother called their father and the police. The victims were taken to the hospital for an examination where nurses examined them and found that both victims showed signs of anal redness and slight injury to the anus.

The victims' father decided to confront Appellant. The victims' father drove to his mother's house and sat in his car to watch the house. He saw Appellant come out of the house to the "burn barrel" and put some trash in the barrel. Appellant "lit the barrel." Appellant began to bring what appeared to be sheets to the barrel as well. Before Appellant could put the sheets in the barrel, the victims' father ran over and knocked the barrel over to put out the fire. The victims' father took the sheets to the police. Appellant was apprehended a few days later.

On August 10, 2009, the Dyer County Grand Jury indicted Appellant for two counts of rape. A jury trial was held January 25 and 26, 2012, and the jury convicted Appellant of both counts. The trial court held a sentencing hearing on February 28, 2012, and imposed a sentence of twenty years for each count to be served at 100 percent as a multiple rapist. The trial court also ordered that the sentences be served consecutively.

Appellant appeals both his convictions and his sentence.

## ANALYSIS

### Sufficiency of the Evidence

On appeal, Appellant argues that the evidence was insufficient to support his two convictions for rape because "[e]ven if this court concludes that a rational juror could have found beyond a reasonable doubt the element of lack of consent via mental defect, [Appellant] did not know nor could he have known that [the victims] were unable to consent to sex due to that defect." The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was indicted under Tennessee Code Annotated section 39-13-503(a)(3). That statute defines rape as "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim . . . [and] [t]he defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless . . . ." T.C.A. § 39-13-503(a)(3). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio,

anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body[.]" T.C.A. § 39-13-501(7).

In his brief, Appellant does not argue that there was no penetration. Instead, he argues that the victims had the mental capacity to consent to sex and that Appellant could not have known that they could not consent. There was ample testimony by Dr. Fred Steinberg, who tested and examined the victims, that the victims were both mildly mentally retarded and had a low IQ. They both functioned at a five-year-old level with regard to their development, including language development, self-direction, and socialization. He stated that neither victim understood what sexual intercourse was. They both failed what Dr. Steinberg termed the "personal safety test," which measured their ability to say no. Dr. Steinberg also opined that at the time of the rapes, the victims did not have the ability to consent to sexual intercourse.

Regardless of this testimony, the question of the consent of the victim is not a condition of rape under Tennessee Code Annotated section 39-13-503(a)(3). To be guilty of rape under the statute in question, the State needed to prove that there was sexual penetration and that Appellant knew or had reasons to know that the victims were "mentally defective, mentally incapacitated or physically helpless." T.C.A. § 39-13-503(a)(3).

At trial, the victims' mother testified that she told their grandmother when Appellant was present that the victims were never to be left alone. The victims' aunt testified that she had been around Appellant while he was dating her mother-in-law. She testified that on one occasion Appellant and the victims' grandmother were taking the victims line-dancing. Their aunt told Appellant that the victims were mentally retarded and that they needed to keep a close eye on the victims because they were going to be in a large crowd of people. The victim's grandmother also testified that she told Appellant that the victims "had the mind of a seven-year-old [child] and they had to be with [her] all the time or their mother or their father." In addition, one of the nurses who examined one of the victims said that she could tell almost immediately that the victim she was examining had a mental deficiency.

As stated above, it is the province of the jury to determine the credibility of the witnesses and the weight to be given to the evidence presented at trial. *Pruett*, 788 S.W.2d at 561. Three witnesses testified that they informed Appellant that the victims had a mental deficiency and were severely developmentally delayed. We conclude that there was ample evidence upon which a reasonable trier of fact could find that Appellant knew of the victims' mental defect or incapacity.

Therefore, this issue is without merit.

**Sentencing**

Appellant also argues that the sentence imposed by the trial court was excessive because the trial court ordered the sentences to be served consecutively.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that, "(2) [t]he defendant is an offender whose record of criminal activity is extensive, . . ." T.C.A. § 40-35-115(b)(2). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the

offense.  *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).  The imposition of consecutive sentencing is in the discretion of the trial court.  *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

At the conclusion of the sentencing hearing, the trial court ordered that the sentences be served consecutively because of his extensive criminal activity based upon Tennessee Code Annotated section 40-35-115(b)(2).  At the time of the generation of the sentencing report, Appellant was fifty years old.  Appellant's criminal history began when he was twenty-four years old with a conviction for driving with a revoked license.  He then had multiple convictions and dispositions for driving offenses, such as reckless driving, driving under the influence ("DUI"), and driving with a revoked license.  When he was twenty-six, he committed an offense and was subsequently convicted of rape and sentenced to twelve years.  His next offense occurred when he was thirty-four, about eight years later.  He was convicted of DUI and theft.  A year later at the age of thirty-five, he committed an offense that resulted in a conviction for aggravated sexual battery and a ten year sentence.  Nine years later at the age of forty-four, he committed theft and aggravated burglary.  These charges resulted in convictions for those two offenses as well as a conviction for felony failure to appear.  He was sentenced to three years for these offenses.  Then at the age of forty-eight he committed the offenses at hand.  It appears that Appellant has either been breaking the law or serving a sentence for breaking the law for over twenty-years from the age of twenty-four up to the current offenses.  We agree with the trial court that this constitutes extensive criminal history and warrants the imposition of consecutive sentences.  Therefore, we conclude that there was no abuse of discretion.

This issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE